UNITED STATES DISTRICT COURT

Northern District of Texas

Wichita Falls Division

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUL – 7 2025
CLERK, U.S. DISTRICT COURT
By_____
Deputy

RONALD G. MILLER,

Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,

Defendant.

Civil Action No.:  7-25CV-069-0

COMPLAINT

JURY TRIAL DEMANDED

## I. INTRODUCTION

1.     This is an action for disability discrimination and retaliation under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq.

2.     Plaintiff Ronald G. Miller ("Plaintiff") brings this action against his former employer, Allstate Insurance Company ("Defendant"), for failure to accommodate, discriminatory discharge, and retaliation after he requested a reasonable accommodation for his known disabilities.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) and 42 U.S.C. §12117(a).

4. Venue is proper in this district under 28 U.S.C. 1391 because a substantial part of the events giving

rise to the claims occurred in this district, and Plaintiff was employed remotely from Wichita Falls,

Texas. III. PARTIES

5. Plaintiff Ronald G. Miller is a resident of Wichita Falls, Texas.

6. Defendant Allstate Insurance Company is a corporation with its principal place of business

inNorthbrook, Illinois and may be served with process through its registered agent:

CT Corporation System

1999 Bryan Street, Suite 900

Dallas, TX 75201-3136

IV. ADMINISTRATIVE EXHAUSTION

7.    Plaintiff    filed    a    timely    charge    of    discrimination    with    the    Equal    Employment

OpportunityCommission (EEOC), Charge No. 450-2024-09936, alleging disability discrimination and

retaliation.

8.    The EEOC issued a Notice of Right to Sue dated May 1, 2025, and this lawsuit is filed within

90 days of Plaintiff's receipt of that notice.

V. FACTUAL BACKGROUND

9.  Plaintiff was hired by Defendant as a Catastrophe Field Property Adjuster on or about April 8, 2024.

10. Plaintiff has documented disabilities, including Depression, Anxiety, Sleep Apnea, and Obesity,

which substantially limit major life activities. Plaintiff is able to walk normally, but experiences

physical limitations specifically related to climbing, such as on ladders.

11. Plaintiff's job description did not specify a maximum weight limit or state that the role required the use of equipment limited to specific weight thresholds.

12. Upon hire, Plaintiff disclosed his disabilities and requested a reasonable accommodation: a ladder that could safely support his weight, or alternatively, reassignment to a vacant remote position.

13. Plaintiff submitted medical documentation and followed proper channels to request accommodation on or about May 13, 2024.

14. Defendant denied this request and failed to engage in an interactive process.

15. On or about June 15, 2024, Plaintiff was informed that his employment would be terminated effective July 3, 2024.

16. Plaintiff reiterated his willingness to purchase a compliant ladder or transfer to open remote positions.

17. Despite applying for at least seven internal roles, Defendant rejected all applications.

18. Plaintiff was terminated on July 3, 2024, allegedly for inability to perform essential job duties,despite the availability of accommodations or reassignment.

19. The timing of the termination--less than two months after his accommodation request--indicates retaliation.

VI. CLAIMS FOR RELIEF

COUNT I: DISABILITY DISCRIMINATION - ADA

20. Plaintiff incorporates by reference the allegations above.

21. Plaintiff is a qualified individual with a disability.

22. Defendant knew of Plaintiff's disabilities and refused to provide reasonable accommodation.

23. Defendant terminated Plaintiff because of his disability or perceived disability.

24. As a direct result, Plaintiff has suffered lost wages, emotional distress, and other damages.COUNT

II: RETALIATION - ADA

25. Plaintiff engaged in protected activity when he requested a reasonable accommodation.

26. Defendant subjected him to adverse action (termination) shortly after.

27. There is a clear causal connection between the request and termination.

28. Defendant's stated reason for termination is pretextual, as Plaintiff could have performed the job with accommodations or transfer.

## VII. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

a. Enter judgment in favor of Plaintiff on all claims;

b. Award back pay and front pay;

c. Award compensatory damages in the amount of $250,000 for emotional distress, pain, suffering, and loss of enjoyment of life;

d. Award punitive damages under the ADA;

e. Award costs and, if applicable, attorney's fees;

f. Grant injunctive relief requiring Defendant to revise ADA accommodation practices;

g. Grant any other relief the Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Ronald G. Miller

P.O. Box 933

Basile, LA 70515

Phone: (337) 693-8728

Email: vmyt23@gmail.com

Pro Se Plaintiff

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA [X] EEOC | |

| Illinois Department of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Ronald Miller | (337) 693-8728 | 03/01/1994 |

| Street Address | City, State and ZIP Code |
|---|---|
| 4811 Likins Cir. #1406 | Wichita Falls, TX 76308 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| The Allstate Corporation | 15+ | (847) 402-5000 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 3100 Sanders Road | Northbrook, IL 60062 | (Worked Remotely) |

DISCRIMINATION BASED ON (Check appropriate box(es).)

| [ ] RACE | [ ] COLOR | [ ] SEX | [ ] RELIGION | [ ] NATIONAL ORIGIN |
|---|---|---|---|---|
| [X] RETALIATION | [ ] AGE | [X] DISABILITY | [ ] GENETIC INFORMATION | |
| [ ] OTHER (Specify) | | | | |

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **05/13/2024**   Latest: **07/03/2024**

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**Statement of Harm:** I suffer from Depression, Anxiety, Sleep Apnea, and Obesity, as I disclosed to Allstate upon my hire. In doing so, I informed several different hiring managers and recruiters that I would require specialty equipment to accommodate my disabilities, including a ladder that could safely hold my weight. Although I substantiated my request with medical documentation and formally requested the accommodations through the proper channels on or about May 13, 2024, Allstate refused my reasonable request shortly thereafter. A few weeks later, on June 15, 2024, my supervisor, Derek Ocasio (CSL), informed me that Allstate would be terminating my employment effective July 3, 2024, because it needed someone to work on a roof. I informed Mr. Ocasio that I would be able to go on the roof and complete the job if I had the specialized ladder I requested, and even offered to pay for the ladder myself. Alternatively, I requested to transfer to one of several remote positions that were vacant at the time. However, Allstate once again denied my reasonable requests and terminated my employment.

**Statement of Discrimination:** I believe I have been discriminated against due to my disabilities (Depression, Anxiety, Sleep Apnea, and Obesity) in violation of Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 et seq.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Jul 25, 2024 _____ Date      Ronald Gregory Miller (Jul 25, 2024 18:10 CDT) Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Philadelphia District Office**
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 05/01/2025

**To:** Mr. Ronald Miller
4811 Likins Cir. #1406
Wichita Falls, TX 76308
Charge No: 450-2024-09936

EEOC    Representative    and
telephone number:

Legal Unit
(267) 589-9707

---

## DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 450-2024-09936.

On behalf of the Commission,

Digitally Signed By: Karen McDonough
05/01/2025
Karen McDonough
Deputy Director

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 450-2024-09916 to the

District Director at Travis Nicholson, 207 S. Houston Street 3rd Floor, Dallas, TX 75202.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 450-2024-09916 to the District Director at Travis Nicholson, 207 S. Houston Street 3rd Floor, Dallas, TX 75202.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.



December 18, 2024

**ATTORNEYS AT LAW**

James Spielberger ‡†
Gabrielle Klepper \† ø HG‡ ¤
Lisa Scheibly \◊S
Zane Herman \ ▽ S ø
Eric D. Rogers \ ø △ S ¤ ‡
Kateline Gardiner \
Samantha A. Koempel \
Raphael Cua \ ø
Diana Estrada \
Kylie Corbett \ B

**OFFICES**

Charleston
Tampa
Chicago *
Atlanta *
Charlotte *
Raleigh *
Orlando *
Jacksonville *
Ft. Lauderdale
Austin *
Houston *
Dallas *
Arlington *
* by apt. only

ATTN: Casey Callahan, EEOC Investigator
U.S. Equal Employment Opportunity Commission
Philadelphia District Office
801 Market St.,
Ste. 1000,
Philadelphia, PA 19107

**Re: Ronald Miller v. Allstate Insurance Company**
**EEOC Charge: 450-2024-09936**

Dear Investigator Callahan,

This is a response to the Position Statement submitted by Allstate Insurance Company (hereinafter "the Company") in response to Ronald Miller's (hereinafter "Mr. Miller") disability discrimination and retaliation claims against the Company.

### I.    The Company's Claims Are False, Without Merit, and Pretextual.

The Company's response is meritless and pretextual. First, the Company claims that it did not discriminate against Mr. Miller based on his disability; however, this is patently false. The Americans with Disabilities Act (ADA) prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individuals holds or desires." In order to establish a claim under the ADA, a claimant must demonstrate that he/she:

"(1) he is disabled; (2) he was a "qualified individual" at the relevant time, meaning he could perform the essential functions of the job in question with or without reasonable accommodations; and (3) he was discriminated against because of his disability."

**OF COUNSEL:**
©

**ONLY LICENSED IN:**
† SC
‡ GA
¤ VA
BNC
S IL
ø TX
\ FL
H AZ

Administrative Office: 4890 W. Kennedy Blvd. Suite 950, Tampa, Florida 33609

Phone: (800) 965.1570   Fax: (866) 580.7499



**A. Mr. Miller Successfully Demonstrates a Prima Facie Case of Disability Discrimination in Violation of the ADA.**

Under the ADA, a "disability" may be considered "a physical or mental impairment that substantially limits one or more major life activities." An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide "reasonable accommodations" for the disability--unless doing so would impose undue hardship on the employer.

Here, Mr. Miller suffers from Depression, Anxiety, Sleep Apnea, and Obesity – all of which constitute physical and/or mental impairments which substantially affect Mr. Miller's ability to perform major life activities, such as walking. Mr. Miller substantiated his disability with requisite documentation provided to the Company in or around May 2024. Further, Mr. Miller was a qualified individual during the relevant period as Mr. Miller was able to perform the essential functions of the position with reasonable accommodation. This is clearly demonstrated by Mr. Miller's ability to complete his training as a field adjuster and obtain licensing in numerous states. Lastly, the Company discriminated against Mr. Miller based on his disability. For instance, Mr. Miller followed the appropriate channels to request that the Company reasonably accommodate his disability. However, the Company flatly denied Mr. Miller's reasonable accommodation and refused to further engage in the interactive process as required by the ADA. After denying Mr. Miller's request for accommodation, the Company terminated Mr. Miller under the pretext that he could not perform the functions of his position despite there not being any truth to this. Thus, Mr. Miller clearly establishes a prima facie case of discrimination based on his disability.

**B. The Company Unmistakably Retaliated Against Mr. Miller.**

Next, the Company further denies that it retaliated against Mr. Miller; however, this, too, is patently false. To establish a prima facie case of retaliation, Mr. Miller must show that: (1) he engaged in a protected activity, (2) he was thereafter subjected to an adverse action, and (3) there exists a causal link between the protected activity and the adverse action.

Here, Mr. Miller engaged in a protected activity when he requested reasonable accommodation for his disability on or around May 13, 2024. Specifically, Mr. Miller requested a heavy ladder to support his weight in order to safely inspect roofs as needed. Next, Mr. Miller experienced an adverse

Administrative Office: 4890 W. Kennedy Blvd. Suite 950, Tampa, Florida 33609

Phone: (800) 965.1570   Fax: (866) 580.7499

**SPIELBERGER**
**L A W   G R O U P**

employment action when the Company flatly rejected his accommodation request and terminated him shortly thereafter. Lastly, there is a causal connection between Mr. Miller's protected activity and his termination as is demonstrated by the temporal proximity between Mr. Miller's reasonable request for accommodation and the Company's termination of Mr. Miller approximately one month later. The Company's given reason for termination further supports a finding of a causal connection, as the Company directly terminated Mr. Miller due to its purported belief that Mr. Miller's disability prevented him from working on roofs. Therefore, contrary to the Company's Statement, Mr. Miller was clearly terminated out of retaliation for engaging in protected disability-related activity.

### C. The Company's Purported Legitimate Reason for Termination is Merely Pretextual.

Lastly, the Company asserts that its supposed legitimate, non-discriminatory reason for terminating Mr. Miller is that Mr. Miller could not perform the essential duties of his position and did not secure another role within the company. The Company contends that the highest weight limit available on ladders approved by OSHA is 375 pounds. However, the Company provides not even a scintilla of evidence to support this allegation. The Company also fails to provide a citation to any OSHA regulation supporting this theory and a quick search reveals that OSHA does not provide a specific maximum weight limit for portable ladders, contrary to the Company's unsubstantiated claim.[1]

The Company additionally states it attempted to search for ladder with a higher weight limit, but that "such ladders approved by OSHA do not exist." Once again, the Company provides no evidence that it conducted any such search for a ladder to accommodate Mr. Miller. The Company's allegation is further discredited by the fact that OSHA does not provide a specific maximum weight limit on portable ladders as described above.

Further, the Company alleges that it gave Mr. Miller an opportunity to apply for other internal positions within the Company. In its position statement, the Company claims that Mr. Miller applied for a Sales Associate position in Boise, Idaho, for which the Company claims Mr. Miller was unqualified, and further states *"Charging Party did not apply for any other positions."* This is overtly untrue, as

---

[1] 29 C.F.R. § 1910.23(c)(3).

Administrative Office: 4890 W. Kennedy Blvd. Suite 950, Tampa, Florida 33609

Phone: (800) 965.1570   Fax: (866) 580.7499

# SPIELBERGER
## L A W   G R O U P

Mr. Miller applied to at least seven internal positions after learning of his termination. See **Exhibit A**. It is clear that the Company attempted to disguise its discriminatory animus by providing Mr. Miller the supposed opportunity to secure another position, but continuously rejected Mr. Miller's attempts to secure those positions.

Therefore, the Company's proffered reason for Mr. Miller's termination is blatantly pretextual and rather the Company clearly terminated Mr. Miller out of discriminatory and retaliatory animus based on Mr. Miller's disabilities.

## II.    **Conclusion**

Therefore, Mr. Miller has established a claim of discrimination based on his disabilities under Title I of the Americans with Disabilities Act of 1990 and Texas Labor Code Chapter 21. Any other issues addressed in the Company's position statement are either irrelevant, or redundant and unworthy of discussion. We respectfully request the EEOC enter a CAUSE finding.

Respectfully submitted,

Eric Rogers, Esq.
Eric.rogers@spielbergerlawgroup.com

cc:    Lisa Scheibly, Esq.
Kylie Corbett, Esq.
Raphael Cua, Esq.

Administrative Office: 4890 W. Kennedy Blvd. Suite 950, Tampa, Florida 33609

Phone: (800) 965.1570   Fax: (866) 580.7499

**Cc:**
Pamela Ferrell
The Allstate Corporation c/o Littler Mendelson, P.C.
2301 MCGEE ST STE 800
Kansas City, MO 64108

Incident Location
The Allstate Corporation
4811 Likins Cir. #1406
Wichita Falls, TX 76308

Lisa Scheibly Esq.
Spielberger Law Group
2101 W. Platt St., 2nd Floor Suite, Tampa, FL
TAMPA, FL 33606


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 450-2024-09936 to the

District Director at Jamie Williamson, 801 Market St Suite 1000, Philadelphia, PA 19107.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 450-2024-09936 to the District Director at Jamie Williamson, 801 Market St Suite 1000, Philadelphia, PA 19107.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

Enclosure with EEOC Notice of Closure and Rights (01/22)

✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.



**Littler Mendelson, P.C.**
Global Services Center
2301 McGee Street
Suite 800
Kansas City, MO 64108

October 4, 2024

**VIA EEOC PORTAL**

Deanna Brooks-Torres
U.S. Equal Employment Opportunity Commission
Dallas District Office
207 South Houston Street, 3rd Floor
Dallas, Texas 75202

> **Re:    Ronald G. Miller vs. Allstate Insurance Company**
> **Charge No.: 450-2024-09936**

Dear Ms. Brooks-Torres:

The following response constitutes the Position Statement of Respondent Allstate Insurance Company ("Allstate" or the "Company") regarding the Charge of Discrimination filed by Charging Party Ronald Miller ("Charging Party").[1,2]

In his Charge, Charging Party claims that Allstate discriminated against him because of his alleged disabilities (depression, anxiety, sleep apnea, and obesity) in violation of the Americans with Disabilities Act ("ADA") by purportedly failing to provide him with a ladder that could accommodate his weight, and failing to provide him with a remote position when a ladder able to support his weight was unavailable. Charging Party further alleges he was retaliated against because of his alleged protected activity. As set forth in more detail below, Charging Party's baseless allegations fail to support any finding of discrimination or retaliation by Allstate. Accordingly, Allstate respectfully requests the Commission dismiss Charging Party's Charge in its entirety.

---

[1] The information and accompanying documentation contained herein, and that which may be submitted hereafter, is strictly confidential and not to be used for any purpose other than the resolution of the current Charge and it may not be disclosed publicly. *See* 42 U.S.C. §§ 2000e-5(b); 2000e-8(e); 29 C.F.R. §§ 1601.22, 1601.26; and 56 Fed. Reg. 10847. To the extent Charging Party is in receipt of this information or accompanying documentation, Charging Party is advised that this information is strictly confidential and should not be disclosed publicly or to any individual unless they have a privileged relationship with that individual. Information and accompanying documentation contained herein designated confidential and/or containing sensitive medical information, confidential commercial or financial information, or trade secret information may not be disclosed to Charging Party.

[2] This response is based upon our understanding of the facts and the information reviewed thus far. Although there has not been an opportunity for formal discovery or a complete formal investigation, this response is submitted for the purpose of aiding the agency in its investigation and facilitating the informal resolution of these matters. This response, while believed to be accurate, does not constitute an affidavit or binding statement of Allstate's legal position, nor is it intended to be used as evidence of any kind in any administrative or court proceeding in connection with Charging Party's allegations. Because additional facts likely would be uncovered through discovery or following a full investigation, Allstate in no way waives its right to present new or additional information at a later date, for substance or clarification. Moreover, by responding to the Charge, Allstate does not waive, and hereby preserves, any and all substantive and procedural defenses that may exist to the Charge and Charging Party's allegations. Allstate requests that any efforts to contact its current or former managers be directed through its counsel.

Deanna Brooks-Torres
October 4, 2024
Page 2

## I.     **COMPANY BACKGROUND.**

Allstate is one of the largest publicly held personal lines insurers in America, with more than 190 million policies in force nationwide.  Founded in 1931, Allstate has been dedicated to protecting its customers from life's uncertainties and preparing them for the future for more than 90 years.

Allstate is committed to maintaining a work environment free from any kind of discrimination.   Specifically, Allstate maintains an anti-discrimination policy that prohibits discrimination on any characteristic protected by federal, state or local employment discrimination laws, including disability.  *See* **Exhibit 1**.  Allstate encourages individuals to report incidents of discrimination by bringing any concerns to the attention of a Manager or the Human Resource Department so that a prompt and thorough investigation can take place. *Id.*  Individuals may also report work-related concerns via the Company's i-Report Line Process.   *Id.*  To encourage reporting of conduct that violates Company policy, Allstate prohibits retaliation against individuals who invoke the protections of the policy, or in any way participate in any activity protected by law.  *Id.*

Allstate is also committed to providing reasonable accommodations to assist its employees with disabilities.  In its accommodation policy, Allstate expressly states that it does not discriminate against any employees on the basis of a qualifying disability, and that it provides reasonable accommodations for all qualified employees with disabilities, so long as the accommodations impose no undue hardship on the business. *See* **Exhibit 2**.  Employees in need of an accommodation should contact their manager or Allstate's Workplace Assistance Team.

As set forth more fully below, Allstate complied with its policies and did not discriminate against Charging Party.

## II.     **FACTUAL BACKGROUND.**

On April 8, 2024, Charging Party was hired as a Catastrophe Field Property Adjuster. In this role, the essential functions of Charging Party's position included the ability to inspect properties damaged by various perils, including wind, hail, water, lightning, fire, and more. This role requires 70- percent travel to locations throughout the United States.  Daily tasks include driving to properties, conducting inspections, evaluating policies and endorsements for coverage, preparing estimates, and settling claims on site with customers.

To conduct property inspections, Catastrophe Field Property Adjusters must be able to carry a 50-pound portable ladder and climb on top of one-to-two story roofs.  Catastrophe Field Adjusters in this role must ship their ladders to the locations to which they are traveling. The highest weight limit available on portable ladders approved by OSHA is 375 pounds.

After Charging Party began employment, he informed his supervisor he weighed over 400 pounds and asked for a ladder to accommodate his weight.  Allstate looked into a specialty ladder but could not find one approved by OSHA that was rated for any amount of

Deanna Brooks-Torres
October 4, 2024
Page 3

weight over 375 pounds. Moreover, an adjuster that exceeds the ladder's weight limit would likewise be at risk of not being supported by the roof they are inspecting. For these reasons, Allstate cannot safely allow adjusters to perform roof inspections if they exceed the maximum weight limit on the portable ladders.

On June 6, 2024, Charging Party's supervisor, Derek Ocasio, contacted Employee Relations for guidance. Mr. Ocasio explained Charging Party was not within the weight limits of OSHA and ladder safety requirements. Mr. Ocasio explained that Charging Party was aware he did not meet the safety standards and was looking for remote positions for which he believed he would be qualified. Mr. Ocasio said Charging Party was at the end of his training and was scheduled to begin working in the field but was unable to do so since he could not meet the ladder safety requirements.

Ultimately, it was determined that Allstate would give Charging Party four more weeks of paid time to secure a new role within Allstate.

On June 10, 2024, Mr. Ocasio met with Charging Party to explain he had until July 3, 2024 to secure a new role within Allstate. If Charging Party could not find a new role within that time frame, he was informed that Allstate would process his termination, but he would remain eligible for rehire.

On June 16, 2024, Charging Party applied for the role of a Remote Sales Associate based in Boise, Idaho. The hiring manager for that role was looking for an associate based in Idaho that had a college degree. Charging Party did not have a college degree and lived in Texas. Moreover, Charging Party's resume reflected that he did not hold any previous jobs for a significant period of time and appeared to stay in most previous jobs for less than one year. For this reason, Charging Party's resume was not selected for an interview. The candidate ultimately selected for the role for which Charging Party applied was native to Boise, had 8 years' experience, had demonstrated job tenure, and was bilingual in Spanish which was a preferred qualification for the role. Charging Party did not apply for any other positions.

On July 3, 2024, Charging Party was separated from employment, as he could not perform the essential functions of his position with or without a reasonable accommodation, and he had not secured another role within the Company for which he was qualified.

III.  **ALLSTATE DID NOT DISCRIMINATE OR RETALIATE AGAINST CHARGING PARTY.**

   **A.  Charging Party's Disability Discrimination Claim is Baseless.**

In his Charge, Charging Party alleges that Allstate discriminated against him because of his disabilities. To establish a *prima facie* failure to accommodate claim, Charging Party must show that (1) he is disabled; (2) he is otherwise qualified for the position with or without a reasonable accommodation; (3) Allstate knew or had reason to know of his disability; (4) he requested a reasonable accommodation; and (5) Allstate failed to provide the reasonable accommodation.

Deanna Brooks-Torres
October 4, 2024
Page 4

As an initial matter, Charging Party has not established he has a disability and Allstate does not concede he is disabled. While Allstate was made aware of Charging Party's designation as "obese" by his physician, such designation alone does not constitute a disability under the ADA. Moreover, Allstate had no knowledge or reason to know of any of the other conditions noted in Charging Party's Charge, such as depression, anxiety, or sleep apnea (which itself is not a recognized disability under the ADA). As such, Allstate could not have discriminated against Charging Party based on these alleged conditions if it had no knowledge of their purported existence or reason to know of them.

Further, Charging Party cannot demonstrate that he is otherwise qualified for the Catastrophe Field Property Adjuster position, nor can he prove that Allstate unlawfully failed to provide a reasonable accommodation. Specifically, Allstate looked into the possibility of acquiring a ladder with a higher weight limit. Unfortunately, such ladders approved by OSHA do not exist. While Allstate could not accommodate this specific request from Charging Party, which it is not required to do as a matter of law, Allstate provided Charging Party with four weeks of paid time to secure another position within Allstate. To present date, Charging Party remains eligible for rehire if he finds a position within Allstate that meets his interests, qualifications, and workplace restrictions (with a reasonable accommodation, if necessary).

In sum, Charging Party cannot establish a *prima facie* case of disability discrimination. Further, he cannot establish, as he must for his claim to survive, a pretext for discrimination or that the reason identified by Allstate is false and made with the intention to cover up the Company's true motives. Based upon the foregoing, Charging Party's disability discrimination allegations are without merit.

Further undermining his discrimination claim is that Charging Party cannot establish that similarly situated, non-disabled employees received more favorable treatment under similar circumstances. Indeed, Charging Party fails to identify even one individual outside of his protected class who received more favorable treatment under similar circumstances. Nor is Allstate aware of any such individual. To the contrary, Charging Party was subject to the same terms and conditions of employment as others in his same role. What is more, if Allstate truly held discriminatory animus towards Charging Party because of his disability, it likely would have separated his initial employment as soon as management learned of his purported disability as opposed to looking into a reasonable accommodation and providing extended paid time to search for other positions within the Company.

**B.    Charging Party's Retaliation Claim Also Lacks Merit.**

Allstate denies it subjected Charging Party to retaliation in any form. To establish a *prima facie* case of retaliation, Charging Party must show that: (1) he engaged in a protected activity, (2) he was thereafter subjected to an adverse action by Allstate, and (3) there exists a causal link between the protected activity and the adverse action. Notably, Charging Party must show that but-for his alleged protected activity, he would not have suffered the adverse action.

Deanna Brooks-Torres
October 4, 2024
Page 5

In his Charge, Charging Party provides absolutely no facts or evidence to support his retaliation claim. Charging Party's failure to adequately detail his allegations deprives Allstate of its opportunity to respond directly to his accusations. Nevertheless, Allstate emphatically denies that Charging Party has been subjected to any retaliation. Of significance, Allstate is unaware of Charging Party having lodged any complaints of discrimination or harassment prior to filing this Charge. To the extent Charging Party claims he was retaliated against for requesting accommodations, such claim fails as he cannot show that Allstate took any adverse action towards him as a result. Indeed, Allstate searched for a ladder that would accommodate Charging Party and provided Charging Party with four weeks of paid time to apply for other jobs within the company. Allstate's diligent efforts to accommodate him firmly belies any suggestion of retaliatory animus.

Simply put, Charging Party cannot produce and has not produced any evidence to demonstrate that he was subjected to retaliation, nor can he meet the heightened "but-for" standard. Accordingly, Allstate respectfully requests that Charging Party's Charge be dismissed.

## IV.    **CONCLUSION.**

Charging Party's Charge of Discrimination should be dismissed because there simply is no evidence to support his discrimination or retaliation claims. Please let me know if I can provide you with any additional information to assist in your investigation.

Sincerely,

LITTLER MENDELSON, P.C.

Pamela J. Ferrell
816.788.7060 direct
816.817.2678 fax
pferrell@littler.com

PJF/kp

Enclosures

cc:    Michael A. Wilder

4876-2096-2539.2

# Exhibit 1

## Chapter 12 - Employee Relations



Print  Back  Close

### Purpose

Provides policy guide information on various employee relations topics. Click a link listed below to jump to the related policy:

- Non-Retaliation
- ▇▇▇▇▇▇▇▇▇▇▇▇
- ▇▇▇▇▇▇▇
- Civil Rights Violations
- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
- Behavior Unacceptable Notification Process
- ▇▇▇▇▇▇
- ▇▇▇▇▇▇▇▇▇▇
- ▇▇▇▇▇▇▇▇
- Procedure for Reporting an Allstate i-Report Line concern

### Policy

**Allstate prohibits any type of harassment, discrimination or retaliation by any type of workforce individual; including but not limited to employee, vendor, intern, volunteer or contingent worker.**

### Non-Retaliation

Allstate values working directly with employees toward the resolution of workplace concerns. Allstate prohibits any workforce individual from retaliating against an employee for bringing forward, in a constructive manner, a concern.

The Allstate i-Report Line Process is Allstate's commitment to a fair, prompt, safe and confidential resolution of work-related concerns. The Allstate i-Report Line should be used to report ethical, legal, regulatory or compliance concerns regarding Allstate and its employees, agents, vendors, clients and customers. (For example: theft, fraud, sexual harassment, failure to comply with federal financial regulations or the transmission of private consumer or employee information.)

It is a structured process to resolve a variety of work-related concerns - to those involving an employee's legally-protected rights.

No retaliatory action will be taken against an employee who exercises his/her legal rights against Allstate.

Back to Top



## Civil Rights Violations

It is the Company's policy to maintain a working environment free from discrimination and harassment. Therefore, any conduct that is discriminatory in nature; motivated by ancestry, age, color, disability, genetic information, gender, gender identity, gender expression, marital status, medical condition, military or veteran status, national origin, race, religion (including religious dress), sex or sexual orientation; and adversely affects an employee's terms or conditions of employment is prohibited. This applies to all areas of employment including: hiring, training, salary administration, promotion, job assignment, benefits, discipline, and termination.

To report an incident, you may speak to your Manager. If this is not an option, you may contact someone in the Human Resource Department.

If you would like to report the incident anonymously, you can call the Allstate i-Report Line.

Line management must report all incidents to the Human Resource Department.

Back to Top





## Procedure for reporting an Allstate i-Report Line concern

The Allstate i-Report Line process should be used to report ethical, legal, regulatory or compliance concerns regarding Allstate and its employees, agents, vendors, clients, interns, volunteers and customers. (For example: theft, fraud, sexual harassment, failure to comply with federal financial regulations or the transmission of private consumer or employee information.)

**Step 1**: Determine if concern should be filed via the Allstate i-Report Line Process

Most workplace concerns are resolved through open and honest discussions with management or your Local Human Resource Representative (Open Door Process).

**Step 2**: File an Allstate i-Report Line concern

There are three ways you can go about filing an Allstate i-Report Line concern:

- Contacting Human Resources to file your concern
- Calling the Allstate i-Report Line
- Accessing the Allstate i-Report Web site

**Step 3**: Local Investigation involving LHR and Local Management

**Step 4**: An Appeal

If the employee is not satisfied with the findings of the Local Management and Local Human Resources, he/she may request an Appeal. A team will review the local decision to ensure that it is consistent with Allstate's practices and procedures.

<u>Back to Top</u>

# Global code of business conduct

## The Allstate family of companies







# Ethical decision-making

When faced with ethical issues where the right decision or course of action is unclear, we can use the following model for our decisions.

## Ethical decision-making model

In a challenging situation, use the following questions to assist you to make an ethical decision. Select *Yes* or *No* to determine how to proceed. If the consequences of a decision could have a negative impact or if you are uncomfortable or unsure answering any of these questions, seek guidance before proceeding.

### Is it legal?
**YES:** Go to the next question.
**NO:** Do not proceed. Seek guidance to find a solution that meets the letter and spirit of the law.

### Does this decision align with Allstate's Values?
**YES:** Go to the next question.
**NO:** Do not proceed. Seek guidance to find a solution that aligns with Our Values.

### Would this decision harm Allstate in any way?
**YES:** Consider the situation from all perspectives. Find a decision that protects Allstate.
**NO:** Go to the next question.

### Would I feel comfortable making this decision public?
**YES:** Proceed with confidence!
**NO:** Continue to challenge your ideas until you find a decision you are comfortable sharing. Seek guidance before proceeding.

### Digital ethics and ethical decision-making

Allstate's digital ethics framework builds on Allstate's Values and Behaviors by providing guidance on how to evaluate ethical concerns and address ethical issues at any point in the data lifecycle. This means that just because something is legal, we also need to decide if it is the right thing to do.

The digital ethics framework also works to help eliminate inadvertent biases, as well as unintended consequences and potential harm to people from the collection, use or sharing of data.

For more information, see the Resources listed at the end of this document.

 



# Speaking up, seeking help and resolving concerns

We can rely on our integrity to guide us, but when we are not sure how to proceed, we also have a duty to step forward, ask questions and seek help. And if we believe a violation of our policies, our Code or the law has happened or may be about to happen, we are obligated to report it.

To seek help, report violations and resolve concerns, you can follow the Speak Up Process by:

- Contacting any manager.
- Contacting Human Resources.
- Emailing your affiliate Compliance mailbox (if applicable).
- Using the additional local reporting options as listed in the Speak Up Process box to the right.

Often it is best to start with your manager when raising a concern, but sometimes this may not be feasible. The most important thing is that you lead the way, speak up and seek help when something doesn't feel right.

## How reports are handled

**We do not tolerate retaliation against anyone who raises a concern, makes a report or cooperates in an investigation.**

The Company will always strive to address concerns fairly and discreetly. We are committed to thoroughly investigating all reports of violations. Employees with concerns are strongly encouraged to identify themselves when seeking assistance. This is the best way to ensure that a thorough and complete investigation can be made, and that an effective and lasting resolution can be reached.

However, we recognize that in some cases people may prefer to remain anonymous when raising concerns. Anonymous reports can be made through the Speak Up Process. An investigation will be conducted using the facts provided, while working to maintain your anonymity as far as permitted by law. When necessary, the Company may also consult with you confidentially if anonymity would hinder the investigation or resolution of the issue.

Reports about a possible violation of the law or any questions about accounting, auditing, disclosure or other financial or reporting practices will be referred to the General Counsel or their designee for investigation. The General Counsel or their designee may refer these matters to the Audit Committee.

### Speak Up Process

The Speak Up Process is an important resource for providing fair, prompt and safe resolutions of concerns. It should be used to report legal, ethical, regulatory or compliance concerns regarding employees, agents, vendors, clients and customers of the Allstate family of companies. You can follow the Speak Up Process 24/7 in the following ways:

- Answer Financial and Allstate U.S. (Allstate Benefits, Allstate Business Insurance, Allstate Dealer Services, Allstate Insurance Company, Allstate Roadside, Arity and Avail): Call (800) 706-9855 or access the website at **Allstate.com/IReport.**

- Allstate Canada Group: Call the ClearView Connects hotline at (866) 275-2138 or access the website at **ClearViewConnects.com.**

- Allstate Northern Ireland: Call the ANI I-Report line at (0800) 169-3658 or access the website at **AllstateNI-Reporting.EthicsPoint.com.**

- Allstate India Private Limited: Call the AIPL I-Report line at 0800-919-0563 or access the website at **ASPL.EthicsPoint.com.**

- Allstate Identity Protection: Call the Convercent hotline at (800) 461-9330 or access the website at **Ethics.InfoArmor.com.**

- Allstate Protection Plans: Call the Convercent hotline at (800) 461-9330 or access the website at **Helpline.SquareTrade.com.**

- National General: Call (800) 706-9855 or access the website at **NationalGeneral.com/IReport.**

Employees are encouraged to identify themselves but may remain anonymous during this process.

# Fair process and disciplinary action

When possible and where required, all parties involved in an investigation will get a fair chance to explain circumstances and present their side of the story. We make efforts to complete the process promptly, while still taking whatever time is needed to conduct a proper and thorough investigation.



# Our people make us a different kind of company

Valuing inclusive diversity and equity

Promoting equal opportunity

Fostering a respectful workplace

Keeping the work environment safe and healthy

Respecting the intellectual property of others

Using social media responsibly

At Allstate, we dare to be bold. It's only through our collective power that we achieve greatness as a company — through daily acts of integrity that protect and empower our customers. It all starts with us.

With Our Shared Purpose, we come together every day with our best ideas, diverse talents and empathetic approach. We do this to inspire and support each other. We do it to bring original ideas and challenge each other to make them better. This isn't just about working together — it's about thriving together. It's why we live Our Shared Purpose each and every day. See how Allstate is prioritizing inclusive diversity and equity in our Environmental, Social and Governance Report at **AllstateSustainability.com.**

## Valuing inclusive diversity and equity
**We succeed together when we value unique identities and perspectives.**

We provide equitable opportunity when we hold each other accountable to encourage and embrace our collective differences. Our individual characteristics, values and beliefs, as well as our backgrounds and experiences, give us fresh perspective and purpose. We work harder, meet customer needs more effectively, share better and identify more innovative ideas when we are accepted for who we are. Our success comes from a chorus of many different voices. At Allstate, every voice counts.

## Promoting equal opportunity
**We evaluate based on performance, and we reward achievement. We never discriminate.**

When we hire and promote based on successful performance, we not only honor Our Values but also ensure that our Company and our customers get the very best. Discrimination of any kind is wrong. Our commitment to equal opportunity helps us find the right person for every role.

## Fostering a respectful workplace
**We respect and support each other. This means being accountable for maintaining a workplace free from verbal or physical harassment, abuse and intimidation of any kind.**

We serve our customers and each other best when we are empathetic and respectful. By caring about the feelings and perspectives of others, we avoid misunderstandings and create a positive work environment that empowers us to deliver superior performance. Engaging with others openly and respectfully, and speaking up about any unwelcome conduct, helps us sustain a culture built on trust.



**Integrity insights**

Integrity is at the heart of who we are. It's non-negotiable. And quite frankly, it's simple: if you see something, say something. You don't have to be the actual victim of harassment, sexual or otherwise, to make a report. Perhaps you notice a coworker who is subjected to inappropriate jokes, behavior or comments by a manager or teammate. By reporting the behavior, you may prevent future harassment or a serious incident from occurring. When our empathy drives our actions, we care for and protect each other.

## Keeping the work environment safe and healthy
**We make the safety and well-being of everyone who works with us a top priority.**

As insurers, we see the impact of accidents and unsafe conditions every day. That's why we don't wait for bad things to happen; we take action to prevent them, and we help our customers do the same. Promoting safety is core to our business, and it starts in our own work environment. The care we show in looking out for each other puts us in the best position to help our customers stay healthy and safe as they pursue their dreams.

If you see or suspect anything that could undermine our commitment to inclusive diversity and equity, promoting equal opportunity, or fostering a respectful and safe workplace, follow the **Speak Up Process.**

 

# Exhibit 2

## Americans with Disabilities Act (ADA)

The Americans with Disabilities Act (ADA) is designed to provide legal protection for persons with disabilities similar to the protection that federal law already provides against discrimination based on race, religion, national origin and gender. The two titles of the ADA that apply to most private industry are:

- Title I which ensures equal employment opportunity for persons with disabilities; and
- Title III which ensures equal access to all public accommodations and commercial facilities.

## Allstate's Policy in Accordance with ADA

Pursuant to the Americans with Disabilities Act (ADA), Allstate Insurance Company prohibits any and all types of discrimination against qualified applicants or employees with disabilities. An individual is disabled if he or she: (1) has a mental or physical impairment that substantially limits a major life activity; (2) has a record of such impairment; or (3) is regarded as disabled. In addition, Allstate will not discriminate against any individual who has a relationship or association with a disabled individual, as set forth in the ADA. A qualified applicant or employee is an individual who can perform the essential functions of the job in question, either with or without a reasonable accommodation.

If Allstate Insurance is notified that a qualified individual with a disability requires a reasonable accommodation in order to participate in the application process or perform the essential functions of a job, the Company will work with that person to find a reasonable accommodation, unless doing so would impose an undue hardship on the operation of Allstate's business.

Employees and applicants may request accommodations orally or in writing, and employees are not required to use any particular words in making a request. As such, applicants or employees in need of an accommodation should contact their manager or Allstate's Workplace Assistance Team (WAT). Managers or leaders who are aware of an applicant's or employee's need for an accommodation should contact Allstate's Workplace Assistance Team. The Team will promptly engage the applicant or employee to discuss the requested accommodation.

**Allstate will not tolerate any form of retaliation against an applicant or employee on the basis of a disability, a request for a disability accommodation, or participation in a complaint or investigation of disability discrimination.**

You may reach Allstate's Workplace Assistance Team by sending an e-mail to workplaceassistance2@allstate.com

Pregnant employees have the statutory right to a reasonable accommodation if the pregnancy causes or contributes to a disability and the accommodation does not impose an undue hardship on the employer. If an employee requests a reasonable accommodation because of a disability that the pregnancy causes or contributes to, the employer shall explore with the employee all of the possible means of providing a reasonable accommodation.

Back to Top

JS 44 (Rev. 04/21) (TXND 4/21)

# CIVIL COVER SHEET

4-25CV-709-P

Case 7:25-cv-00069-O-BP Document 1 Filed 07/07/25 Page 34 of 34 Page ID 34

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Ronald Gregory Miller

### DEFENDANTS
AllState Insurance Co.

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

RECEIVED

JUL - 1 2025

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & / [ ] 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | Slander / Pharmaceutical Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' / Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability / [ ] 368 Asbestos Personal Injury Product | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 340 Marine / Liability | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 345 Marine Product Liability / **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal / [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | Injury / [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | [ ] 362 Personal Injury - Medical Malpractice | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights / **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 245 Tort Product Liability | [x] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** | [ ] 462 Naturalization Application | | |
| | / [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | [ ] 448 Education / [ ] 550 Civil Rights | | | |
| | / [ ] 555 Prison Condition | | | |
| | / [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause: Discrimination, wrongful termination

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ $250,000

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is related to this filing if the case: 1) involves some or all of the same parties and is based on the same or similar claim; 2) involves the same property, transaction, or event; 3) involves substantially similar issues of law and fact; and/or 4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

    

EUNICE, LA 70535
JUN 30, 2025

9589 0710 5270 1243 1465 45

RDC 03        76102

**$19.05**

S2324D502471-11

PRESS FIRMLY TO SEAL

# PRIORITY®
## MAIL

■ Expected delivery date specified for domestic use.

■ Domestic shipments include $100 of insurance (restrictions apply).

■ USPS Tracking® service included for domestic and many international destinations.

■ Limited international insurance.**

■ When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the
Domestic Mail Manual at http://pe.usps.com.

** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

**USPS ® UNITED STATES POSTAL SERVICE ®** | **PRIORITY® MAIL**



VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM: Ronald G. Miller
P.O Box 933
Basile La 70515

*X-RAY*

# FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

# TRACKED ■ INSURED

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

RECEIVED
JUL - 7 2025
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

TO: United States Court
House
501 W. 10th st.
Unit 310
Fort worth Tx 76102



PS00001000014   EP14F October 2023
1/2

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.

This package is made from post-consumer waste. Please recycle – again.

Label 228, December 2023        FOR DOMESTIC AND INTERNATIONAL USE