**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **RONALD GREGORY MILLER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:25-cv-00069-S-BP** |
| | § | |
| **ALLSTATE INSURANCE COMPANY** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Motion to Compel Arbitration and Brief and Appendix in Support that Defendant Allstate Insurance Company ("Allstate") filed on January 29, 2026 (ECF Nos. 43-45), the response that *pro se* Plaintiff Ronald Gregory Miller ("Miller") filed that same day (ECF No. 46), and the reply that Allstate filed on February 12, 2026 (ECF No. 48). After reviewing the pleadings and the applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Karen G. Scholer **GRANT** Allstate's Motion (ECF No. 43) and **STAY** the case pending the completion of arbitration.

**I.     BACKGROUND**

From April to July 2024, Miller was a Wichita Falls-based Catastrophe Field Property Adjuster for Allstate. To perform the duties of that role, Miller had to access certain heights, which involved the use of a ladder. But Miller is physically limited by obesity and has trouble climbing. Additionally, many ladders are not rated to sustain his weight. In May 2024, Miller disclosed these challenges to Allstate and proposed two potential accommodations: a reinforced ladder or reassignment to a remote position in the company. Allstate did not pursue either option. On July 3, 2024, the company terminated Miller's employment. *See*, *e.g.*, ECF No. 40 at 1-2.

After receiving a right to sue letter from the Equal Employment Opportunity Commission, Miller sued Allstate and moved for leave to proceed *in forma pauperis* on July 7, 2025. ECF Nos. 1-2; *see* ECF No. 40 at 2. The Court granted such leave on July 16, 2025, and it completed judicial screening pursuant to 28 U.S.C. § 1915(e)(2) on September 23, 2025. ECF Nos. 8, 13. Allstate answered Miller's complaint on November 5, 2025, and the parties filed their Joint Status Report on December 5, 2025. ECF Nos. 26, 30.

On January 5, 2026, Miller filed an Amended Complaint, alleging discrimination and retaliation under the Americans with Disabilities Act of 1990 ("ADA"). Allstate answered on January 20, 2026. ECF No. 41. A little over a week later, Allstate filed the present motion, arguing that as a condition of his employment, Miller executed a valid, binding arbitration agreement that covers the claims he brings in this suit and requires that those claims be submitted to arbitration. *See generally* ECF Nos. 43-44. Miller argues in response that the arbitration agreement was not a valid contract and Allstate's conduct in this case amounts to a waiver of any right to enforce arbitration. *See generally* ECF No. 46.

## II.    LEGAL STANDARD

In the Federal Arbitration Act, Congress expressed "a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). When considering a motion to compel arbitration, the court must first determine "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (citation omitted). Where there is a valid arbitration clause, "there is a presumption of arbitrability[,] and the court must compel arbitration "unless it may be said with

positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Courts resolve doubts in favor of coverage. *Id.* (collecting cases).

## III. ANALYSIS

### A. A valid agreement to arbitrate between the parties exists under Texas law.

On March 6, 2024, Allstate notified Miller via email that he had a job offer with the company. ECF No. 45 at 22. Attached to that email were two documents: "OfferLetter.pdf" and "Mutual_Arbitration_Agreement_No_Signature.pdf." *Id.* The offer letter informed Miller that his employment was contingent on his "signing the Mutual Arbitration Agreement, indicating [his] acceptance of its terms." *Id.* at 18. Miller did so on April 5, 2024. *Id.* at 10.

In relevant part, the Mutual Arbitration Agreement ("the Agreement") provides:

> [Y]ou agree to arbitrate any and all claims against Allstate that could be brought in a court including, without limitation, all claims arising directly or indirectly from your employment or termination. This Agreement includes, without limitation, claims under federal, state, and/or local statutes, regulations, ordinances, and/or common law. This Agreement is governed by the Federal Arbitration Act. Allstate agrees to arbitrate any and all claims against you.

*Id.* at 8. It also provides:

> This Agreement, as well as all terms and conditions of your employment, shall be governed by and shall be interpreted in accordance with federal law and the laws of the state in which you were employed by Allstate at the time the claim(s) presented in the arbitration arose.

*Id.* at 10.

In deciding whether Miller and Allstate contractually agreed to arbitrate, the Court applies the applicable state law governing contract formation. *First Options of Chi., Inc. v. Kaplan*, 514

U.S. 938, 944 (1995) (collecting cases). The parties do not dispute that Texas contract formation law governs in this case.

"Under Texas law, a valid contract requires an offer, acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutual and binding, and consideration." *In re Online Travel Co.*, 953 F. Supp. 2d. 713, 718 (N.D. Tex. 2013) (collecting Texas cases). "[A] written arbitration agreement is prima facie valid and must be enforced unless the opposing party . . . alleges and proves that the arbitration clause itself was a product of fraud, coercion, or such grounds as exist at law or in equity for the revocation of the contract." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 341 (5th Cir. 2004) (cleaned up).

Miller raises two objections. First, he contends that mutual assent did not exist at the time he signed the Agreement. He couches this argument in a peculiar place: the filename of the .pdf document version of the Agreement he received via email. According to Miller, since he is "a layperson with no legal training," he "reasonably understood" the filename "Mutual_Arbitration_Agreement_No_Signature.pdf" to imply the Agreement was "informational and did not require execution or consent." ECF No. 46 at 2-3. Because, as he argues, Allstate's file naming convention "created ambiguity as to whether the document was contractual at all," mutual assent was not present to form a valid contract. *Id.*

Although Miller cites to the maxim of contract law that "where an ambiguity exists in a contract, the contract language will be construed strictly against the party who drafted it since the drafter is responsible for the language used," ECF No. 46 at 2 (citing *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990)), this argument is inapposite. The ambiguity Miller complains of did not concern the contract or its terms. First, Allstate made a clear statement to Miller that his job offer was contingent on his signing the Agreement. ECF No. 45 at 18-19

(Miller's March 2024 offer letter). Second, Miller signed the Agreement and did so just beneath language that reads: "By affixing my electronic signature here, I agree to be bound by this Agreement." *Id.* at 10. Because of these circumstances, it is inconceivable that Miller could conclude that the Agreement "was informational" simply because of the Agreement's filename. ECF No. 46 at 2. While the Court acknowledges that Miller does not have legal training, his argument places too little faith in a reasonable "layperson['s]" ability to recognize that under the circumstances "No_Signature" only meant the document had not yet been signed.

Regardless of Miller's argument to the contrary, mutual assent does not evaporate due to one party's subjective state of mind. "The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did." *E.g.*, *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied). Here, Miller signed the Agreement. Therefore, irrespective of his interpretation of the Agreement's filename, mutual assent was present, and the Agreement is not invalid on that basis. *See also In re Dallas Peterbilt, Ltd.*, 196 S.W.3d 161, 162 (Tex. 2006) ("An at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law.").

Further, although Miller also refers to the filename as a "material misrepresentation," *id.* at 1, "misleading," and "deceptive," *id.* at 3, the Court declines to give credence to this argument given the facts of the case. The Court concludes that Miller does not raise a plausible allegation that the Agreement was the product of fraud.

Next, Miller contends that he did not knowingly or voluntarily waive his right to a jury trial. ECF No. 46 at 3. To this end, he argues that he was unrepresented by legal counsel during the onboarding process with Allstate, that no representative from Allstate explained to him what

he was signing, and that Allstate assumed a "take-it-or-leave-it" posture that left Miller without meaningful choice. *Id.* But even assuming the truth of these allegations, these circumstances do not invalidate Miller's contract with Allstate.

Because Miller signed the Agreement, he is presumed to have read it. *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1997). Accordingly, absent evidence of his incapacity to contract, he "must . . . be held to have known and fully comprehended the legal effect of the contract." *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 146 (Tex. App—Houston [1st Dist.] 1986, no writ). Miller offers no facts to show his incapacity, and the Agreement informed him in plain language what he was waiving by signing it. ECF No. 45 at 8-10; *id.* at 8 ("**Waiver of jury trial**" (emphasis in original)). Therefore, his base contention that he did not know what he was waiving by signing the Agreement cannot serve to invalidate the Agreement. "[T]he fact that []he now contends that []he did not understand a specific clause or term is immaterial to the validity of the [A]greement." *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 878 (Tex. App—El Paso 2005, no pet.).

Miller's other arguments touch upon the Agreement's procedural unconscionability. First, Miller asserts that he had "no meaningful opportunity to review . . . or consult legal counsel," since the process was "presented as mandatory." ECF No. 46 at 3. But the inability to "consult with an attorney or to review or negotiate an arbitration provision does not, without more, render the Agreement unconscionable." *Escalera v. JD Byrider Dfw-Tex., Inc.*, No. 3:14-cv-817-N, 2014 WL 12588317, at *3 (N.D. Tex. June 16, 2014) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002)). And Allstate's "take-it-or-leave-it" disposition is not just legally conscionable; it is commonplace. *See, e.g.*, *In re Halliburton Co.*, 80 S.W.3d at 572 ("Because an employer has a general right under Texas law to discharge an at-will employee, it cannot be unconscionable,

without more, merely to premise continued employment on acceptance of new or additional employment terms."). "Mere inequality of bargaining power is not a sufficient reason to hold an arbitration agreement unenforceable in the employment context." *Pilot Travel Ctrs., LLC v. McCray*, 416 S.W.3d 168, 180 (Tex. App—Dallas 2013, no pet.) (no procedural unconscionability where at-will employee has to sign an arbitration agreement to be employed). Thus, Miller has not sufficiently alleged the Agreement's unconscionability.

Because the Court finds that mutual assent did exist, and that Miller has failed to raise an availing ground to defeat the Agreement's presumptive application, the Court concludes that the Agreement is a valid agreement to arbitrate between Miller and Allstate under Texas law.

**B.      Miller's claims are within the scope of the arbitration agreement.**

The parties do not dispute that the Agreement covers Miller's claims, and the Court agrees. In his Amended Complaint, Miller brings claims against his former employer Allstate for discrimination and retaliation under the ADA. ECF No. 40. Because the Agreement explicitly provides that the signer "agree[s] to arbitrate any and all claims against Allstate that could be brought in a court including, without limitation, all claims arising directly or indirectly from [his] employment or termination," ECF No. 45 at 8, Miller's ADA claims fall squarely within that purview.

**C.      Allstate has not waived its right to enforce arbitration.**

In arguing that Allstate has waived its right to enforce arbitration, Miller contends that by "actively litigat[ing] this case in federal court for nearly three months before seeking arbitration," Allstate has "act[ed] inconsistently with the right to arbitrate." ECF No. 46 at 4-5.

A party waives arbitration if it "knowingly relinquish[es] the right to arbitrate by acting inconsistently with that right." *Garcia v. Fuentes Rest. Mgmt. Servs. Inc.*, 141 F.4th 671, 676 (5th

Cir. 2025) (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022)). In making this determination, the Court "consider[s] the totality of the circumstances." *Id.* at 677.

A party opposed to a motion to compel arbitration may demonstrate that the opposing party participated in a "substantial invocation of the judicial process." *Id.* at 676. This involves "at the very least . . . some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999). To that end, Miller points to three steps Allstate took before moving to compel arbitration: (1) answering Miller's original Complaint on November 5, 2025; (2) filing an amended answer to Miller's Amended Complaint on January 20, 2026; and (3) participating in "Rule 26 proceedings." ECF No. 46 at 5.

First, regarding both of Allstate's answers, Miller argues that Allstate "address[ed] the merits of Plaintiff's claims" rather than "assert[] arbitration." *Id.* But as it happens, in both of those answers, Allstate did assert that Miller's claims were "barred because [Miller] agreed to submit these claims to binding arbitration." ECF No. 26 at 4; ECF No. 41 at 4. Even so, "[a]nswering a complaint [by itself] does not typically suggest that a party has substantially invoked the judicial process." *Garcia*, 141 F.4th at 679. As the Fifth Circuit has reasoned, since "answers are the most basic form of responsive litigation, with failure to answer resulting in default judgment . . . [,] [t]o find that the filing of an answer always contributes to substantially invoking the judicial process would be to turn a blind eye to the realities of litigation." *Id.*

Therefore, to the extent Miller relies merely on Allstate's natural reactions to Miller's Complaint and Amended Complaint as demonstrations that Allstate substantially invoked the judicial process, his reliance is misplaced. Further, in each answer it filed, Allstate preserved its

arbitration affirmative defense. *Contra id.* (Defendants asserted thirty-one affirmative defenses in answer but failed to mention an arbitration agreement).

Next, regarding the "Rule 26 proceedings," Miller argues that Allstate "allowed the case to advance toward discovery under the Court's scheduling order." ECF No. 46 at 5. This argument also does not demonstrate Allstate substantially invoked the judicial process.

"It is generally true that participation in discovery does not weigh heavily in favor of waiver." *Garcia*, 141 F.4th at 678. And while the Fifth Circuit has stated that "[p]arties cannot enjoy the benefits of federal discovery, and then, after doing so, seek to enforce a decision through private resolution," *Janvey v. Alguire*, 847 F.3d 231, 244 (5th Cir. 2017), it remains true that "minimal discovery" will likely not suffice to establish waiver. *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991); *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 421 (5th Cir. 1985) ("[W]hen only a minimal amount of discovery has been conducted, which may also be useful for the purpose of arbitration, the court should not ordinarily infer waiver.").

Here, the parties engaged in a Rule 26(f) conference as is required under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(f)(1). At that conference, Allstate advised that it would be moving to compel arbitration and stay proceedings. ECF No. 30 at 3. In addition to initial disclosures, following the Rule 26(f) conference, Miller "propounded a First Set of Interrogatories and Request for Admissions," which Allstate contends it answered "out of an abundance of caution so that they could not be deemed admitted," but did so while "assert[ing] objections to the discovery based on the present issue of arbitration." ECF No. 48 at 6. In either event, the circumstances do not demonstrate that Allstate substantially invoked the judicial process. Discovery in this case remains in a nascent stage, and at each turn in this case, Allstate has routinely apprised Miller of its intent to seek to compel arbitration.

Miller also specifically objects to Allstate filing the present Motion on January 29, 2026, which according to Miller is "just four days before the Court-ordered discovery deadline of February 2." ECF No. 46 at 5. First, the Court is unaware of exactly which discovery deadline Miller believes fell on February 2, 2026, but the Scheduling Order requires completion of discovery on July 24, 2026 and service of initial disclosures on December 15, 2025. *See* ECF No. 31 at 1. More importantly, Miller contends that Allstate "invok[ed] arbitration only after substantial litigation activity, especially when discovery obligations bec[a]me imminent," but the record does not support that any substantial litigation activity ever occurred. ECF No. 46 at 6. Miller's argument to the contrary is unconvincing.

While Allstate consistently stated that it intended to seek arbitration three different times between November 2025 and January 2026, the Court cannot conclude from the limited discovery Allstate participated in to date that it substantially invoked the judicial process. Nor does Allstate's other behavior in this case demonstrate as much. Indeed, a "defendant may allow significant time to pass and may engage in some preliminaries of litigation without the court's finding substantial invocation." *Garcia*, 141 F.4th at 680 (quoting *Aptim Corp. v. McCall*, 888 F.3d 129, 141 (5th Cir. 2018)). In making this determination, the Court evaluates "the issue of delay 'objectively, independent of motivation,' considering it in light of all the facts." *Id.* (citing *Walker*, 938 F.2d at 578).

Temporally speaking, there is "no bright line rule" to determine when the movant's period of inaction becomes too dilatory. *See id.* Miller served Allstate with his Original Complaint on October 1, 2025. ECF No. 16. Allstate first made Miller aware of its intent to pursue arbitration on November 5, 2025. ECF No. 26. The parties engaged in their Rule 26(f) conference on or before December 5, 2025, and limited discovery followed. *See* ECF No. 30; ECF No. 48. After Miller

filed his Amended Complaint on January 5, 2026 (ECF No. 40), Allstate moved to compel arbitration on January 29, 2026. ECF No. 43. All told, this is a timeframe of a little less than four months. The Fifth Circuit has found that when five months passed between answer and motion to compel arbitration, "during which only the defendant's preliminary interrogatories and request for production were issued and answered," the movant had not substantially invoked the judicial process. *Tenneco Resins, Inc. v. Davy Int'l, AG,* 770 F.2d 416, 421 (5th Cir. 1985).

Allstate has not sought "a decision on the merits before attempting to arbitrate," or "wait[ed] until the district court gave very strong indications that [it] favored" Miller's position in this case. *Petroleumn Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009) (cleaned up). Instead, at each stage of this case, Allstate has neither irrevocably availed itself of the judicial process nor abandoned its intention to seek the exact relief requested in the present Motion. Under the circumstances, the Court concludes Allstate has not waived its right to compel arbitration.

        **D.**        **The Court should stay the case pending conclusion of arbitration.**

"When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475 (2024). Here, Allstate moves to stay this case pending conclusion of arbitration. ECF No. 43 at 1. Thus, the Court should stay the case pending resolution of the arbitration proceedings and order the Clerk to administratively close the case in the meantime.

**IV.**      **CONCLUSION**

Because Miller and Allstate agreed to arbitration the present dispute, and because Allstate has not waived its right to arbitrate this case, the undersigned **RECOMMENDS** that Judge Scholer

**GRANT** Allstate's Motion to Compel Arbitration (ECF No. 43), **STAY** Miller's claims pending resolution of this dispute in binding arbitration, and **ORDER** Miller and Allstate to file a Motion to Reopen the Case, if necessary, following conclusion of the arbitration.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on March 3, 2026.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE